R. L. HILTON, Plaintiff, SUBURBAN SUPPLY COM-
PANY, LUMAGHI COAL COMPANY, and LORI-
MER & GALLAGHER COMPANY, Intervenors
and Respondents, v. UNIVERSAL CONSTRUC-
TION COMPANY and the CITY OF ST. LOUIS,
Defendants, UNIVERSAL CONSTRUCTION COM-
PANY, Appellant.

St. Louis Court of Appeals.    Opinion Filed December 2, 1919.

1. MUNICIPAL CORPORATIONS: Sewers: Sewer Contracts: Sewer
Contractor Liable for Materials and Labor Used in, Work.    In a
proceeding against a sewer contractor and the City of St. Louis
in the nature of an equitable garnishment, which sought an order
on the City to pay out of retained percentage in its possession the
amounts due intervenors for materials sold to a subcontractor,
etc., where under the broad terms of the contract and bond the
sewer contractor obligated itself to pay the proper parties all
amounts due for material and labor used and employed in the
performance of the work, held under the provision contained in
the bond and contract it was not incumbent upon the intervenors
to show that the materials furnished by them actually entered into
the construction of the sewer, it being sufficient, in order to en-
title them to recover, that the materials were used and employed
in the performance of the work contemplated by the contract.

2. ——: ——: ——: ——: Powers of City of St. Louis to Con-
tract for Public Work Broader Than Statute.    Even though the
provision of a contract and bond for the construction of a sewer,
which provided that the contractor should pay the proper parties
all amounts due for material and labor used and employed in the
performance of the work, was broader than required by section
1247, Revised Statutes 1909, the contract and bond is not ultra vires
the corporation, the city having the general power to build sewers
has the implied power of imposing the obligation upon the con-
tractor to pay those who furnish labor and materials used and
employed in the performance of the contract, regardless of the
express power given to the city by the statute.

Appeal from the Circuit Court of the City of St. Louis.
—Hon. W. M. Kinsey, Judge.

AFFIRMED.

*Kinealy & Kinealy* for appellant.

(1) There can be no mechanic's lien against public works. Abercrombie v. Ely, 60 Mo. 23. (2) The purpose of the statutory and contract provisions for the payment of labor and materials on public works is to give the claimant the same protection he would have were the work private and therefore lienable. St. Louis etc., v. Construction Co., 174 Mo. App. 555; City of Alpena v. Title Guar. Co., 159 Mich. 329. (3) Tools and appliances of the contractor are not within the purview of mechanic's lien statutes. 28 Cyc. 1041, tit. Munic. Corps.; Kansas City to use v. Youmans, 213 Mo. 151. (4) Coal used for fuel in hoisting engines, excavators, etc., are not lienable nor within the protection of the public works contract here in question. U. S. to use, v. City Tr., S. D. & Sur. Co., 23 App. D. C. 153; Sampson v. Commonwealth, 202 Mass. 326; Thomas v. Commonwealth, 215 Mass. 369; Philadelphia v. Malone, 214 Pa. 90; City of Alpena v. Title Guar. Co., 168 Mich. 350; Schultz v. Quereau Co., 210 N. Y. 257; Carnegie Fuel Co. v. Interstate Tr. Ry. Co., 165 Wis. 46; Cin. etc., R. R. Co. v. Shera, 36 Ind. App. 315; Niagara Oil Co. v. McBee, 45 Ind. App. 576; Holter Hdw. Co. v. Ontario Min. Co., 24 Mont. 198; 33 Cyc. 468, tit. Railroads. A lumber materialman must show the value of the lumber that actually entered into the structure. Fitzpatrick v. Thomas, 61 Mo. 512; Schulenberg v. Prairie Home Inst., 65 Mo. 295; Deardoff v. Everhart, 74 Mo. 37; Lumber Co. v. Ware, 150 Mo. App. 61.

*John B. Denvir, Jr.* for respondent.

(1) Coal used for fuel in hoisting engines, excavators, etc., is chargeable against public work like that in question here, because it is material which entered into the construction of the sewer. Johnson v. Starrett, 127 Minn. 138; City Trust & C. Co. v. U. S. to use of Bryant, 147 Fed. Rep., 155; United States v. U. S. F. &

G. Co., 83 Vt. 278; Rapauno Chemical Co. v. G. & N. Ry. Co., 59 Mo. App. 1; Kansas City to use v. Youmans, 213 Mo. 151; National Surety Co. v. U. S., 228 Fed. 577; U. S. to Use v. Lowrance, 252 Fed. 122; U. S. to Use v. Lowrance, 236 Fed. 1008-9; Hercules Powder Co. v. Knoxville, R. R. Co., 83 S. W. 354; Zipp v. Fidelity & Deposit Co., 73 App. Div. 20; Beal v. Fidelity & Deposit Co., 76 App. Div. 526; Poland, Trustee, v. Lamville Valley R. R. Co., 52 Vermont 145; James v. Greenville Lumber Co., 122 N. C. 160; Pocahontas Coal Co., v. Electric Co., 118 N. C. 232; Annotations to Schultz v. Juerean, 1915 E. L. R. A., p. 987 et seq.; Annotations to Standard Boiler Works v. National Surety Co., 43 L. R. A. (N. S.), p. 167 et seq.; Powder Co. v. Greenwich & J. Ry. Co., 76 N. E. 153. (2) The findings of fact by the Referee stand as the verdict of a jury, and having been confirmed and approved by the court, are not open to review, and there being no seriously controverted legal propositions, the judgment on the lumber claim of the Lorimer Gallagher Company must be affirmed. Citizens Coal & Mining Co. v. McDermott, 109 App. 306; Rhodes v. Guhman, 156 Mo. App. 362; Furstenfeld v. Furstenfeld, 152 Mo. App. 733; Citizens Nat. Bk. v. Donnell, 172 Mo. 384; Tufts v. Latshaw, 172 Mo. 359.

BIGGS, C.—This is a suit in the nature of an equitable garnishment against the Universal Construction Company and the City of St. Louis for materials sold to a sub-contractor of a prime contractor for public work. The suit was instituted in behalf of the Hunkins-Wilkins Lime & Cement Company and R. L. Hilton, alleging that the city entered into a contract with the defendant Universal Construction Company for the construction of a public sewer, which contract provided that the city should pay for same on monthly estimates of the amount of work performed and should retain 15 per cent until the completion of the work; that the plaintiffs furnished materials to a sub-contractor on the

work, J. W. Farley & Company, and to their trustee, they having afterwards been declared a bankrupt. The prayer of the petition was for an order on the city to pay out of the retained percentage in its possession the amount due the plaintiffs, the sewer having been completed.

The suit as to the original plaintiffs was afterwards dismissed on their applications and they were permitted to withdraw, their claims having been paid and discharged. In the meantime, however, intervening petitions were filed in the suit in behalf of the Suburban Supply Company, the Lorimer & Gallagher Company and Lumaghi Coal Company.

In their intervening petitions the Suburban Supply Company and the Lumaghi Coal Company repeat substantially the allegations contained in the plaintiffs petition, and allege that they had furnished to the subcontractor Farley & Company, coal which was used by said Farley & Company for the construction of said sewer, and that their claims against said sub-contractor remain unpaid; the Suburban Supply Company alleging that there was due to it $425.74, and the Lumaghi Coal Company alleging that the value of the coal furnished by it was $822.06.

The Lorimer & Gallagher Company by its intervening petition repeat substantially the allegations of the plaintiff's petition, and alleges that it furnished material in the shape of lumber to the sub-contractor of said sewer of the reasonable value of $359.63, which lumber was used in the construction of said sewer, and which sum remains due and unpaid.

All of these intervenors pray for an order on the city to pay to them out of the fund in the city's possession belonging to the Universal Construction Company the amounts claimed in their respective intervening petitions.

The defendant, Universal Construction Company, denied generally the allegations of the intervening petitions.

The cause, upon motion of the plaintiffs, was referred to a Referee, who after hearing the evidence, filed a report recommending that as to the claims of the Suburban Supply Company and Lumaghi Coal Company a judgment be rerdered in favor of the defendants, and as to the claim of Lorimer & Gallagher Company for furnishing the lumber it was recommended that a judgment be rendered in favor of interventor, Lorimer & Gallagher Company, in the sum of $358, being the reasonable value of the lumber furnished, and that the same be paid out of the money in the hands of the City of St. Louis.

On exceptions being duly filed to the Referee's report, the Circuit Court overruled the exception filed by the defendant, Universal Construction Company to that part of the report recommending judgment in favor of Lorimer & Gallagher Company, and sustained the exceptions filed on behalf of the Suburban Supply Company and the Lumaghi Coal Company, and thereupon entered judgment in behalf of these intervenors for the amounts reported by the Referee, being the reasonable value of the materials furnished as found by him, and ordered that the intervenors be paid their respective claims out of the fund adjudged to be due Universal Construction Company from the City of St. Louis.

After taking the customary steps the defendant Universal Construction Company, appealed the cause to the Supreme Court. That court transferred the cause to this court, holding that the amount involved was within our jurisdiction, and that the city was a mere nominal party and did not appeal. [Hilton et al. v. Universal Const. Co. et al., not yet officially reported, but see 212 S. W. 867.]

The contract under which the work was let is a combination contract and bond between the Universal Construction Company, the City of St. Louis, and the Fidelity & Deposit Company which signed as security for the faithful performance of the contract

on the part of the Universal Construction Company. By this contract and bond it is provided, that if the contractor shall fail to pay the laborers employed on the work or to pay for materials used therein, the Sewer Commissioner may withhold his certificate for everything in excess of 85 per cent of the value of the work done until he shall be satisfied that all claims for labor or materials are paid. In addition, the said contract and bond provides, that the Universal Construction Company shall pay the proper parties all *amounts due for material and labor used and employed in the performance thereof.* (Italics ours).

There is little dispute in the record as to the essential facts. As to the coal claims of the Suburban Supply Company and Lumaghi Coal Company, it appears from the record that this coal was furnished and delivered by the interventors to a sub-contractor, Farley & Company, and was used by the said sub-contractor for making steam in locomotives drawing small cars, carrying materials used in and about the sewer in question, upon a track running from one end of the sewer to the other, and also for carrying dirt along the side of the sewer as the dirt was taken the cars, which cars were moved from one place to another, along the sewer, that is, the dirt was placed on the from the trench with a steam shovel and dumped on to cars with the steam shovel and taken from the trench at one place and moved to another place and dumped back into the sewer from the cars after the masonry and brickwork was completed. The coal was also used for operating stationary engines which furnished the power for the steam shovel and also for machines which hoisted and moved the materials which were taken from and placed in the sewer.

As to the lumber claim of the Lorimer & Gallagher Company, it appears that this lumber was furnished to the sub-contractor for the purpose of bracing up the sides of the ditch to keep it from caving in while

the men were engaged in the work of putting in the brickwork and masonry. It is unquestioned that the lumber in the amount claimed by this intervenor was delivered to the sub-contractor which used it for the purpose stated. It appeared that a part of the lumber was left in the ditch after the work was completed, as they were unable to remove it, and that, however, they did remove a part of it, which part had been used for the purpose stated, and there is evidence to the effect that after it was removed it was washed away by floods of the River des Peres. When the contractor left the work none of the lumber was taken away from the work: it was either left in the ditch, they being unable to remove it, or it was washed away by the floods.

The question presented by this appeal is whether this material in the form of coal and lumber used in the manner heretofore stated is *material* within the terms of the contract and bond referred to between the contractor and the city.

As to the coal claims appellant contends that this material furnished as it was did not actually enter into the construction of the sewer, and therefore could not form the basis of a materialman's lien under our statute, and that under the terms of the contract and bond in suit the intervenors could only recover for such items of material as were lienable under our lien statute, being section 8212 of the revision of 1909.

As to the lumber claim, the appellant contends that as to that part of the lumber which was used up in the construction of the sewer the intervenor would be entitled to recover, but appellant contends that as the evidence shows that a part of this lumber was washed away in the floods and not used up, and that inasmuch as the evidence fails to disclose which was washed away and which part was used, that it was error on the part of the circuit court to allow the intervenor Lorimer & Gallagher Company to recover for any sum.

The state statute, section 1247, Revised Statutes 1909, requires that in public work of this character the authorities shall require a bond of the contractor conditioned "for the payment for all material used in such work and for all labor performed in such work, whether by sub-contractor or otherwise."

The courts of this State have held that the general purpose of the statute in requiring a bond from the contractor, is to afford to those furnishing material and labor on public work, which cannot be subjected to a mechanic's lien, the same measure of protection as is afforded by the mechanics' lien law where the improvement is not of a public character. [State to the use of Supply Company v. Construction Company, 175 Mo. App. 555, l. c. 562, 158 S. W. 98.] It does not follow from this, however, that all material furnished on account of public work must be such articles as would be lienable under our mechanics' lien law in order to allow a plaintiff to assert a claim against a contractor who furnished material to a sub-contractor on public work.

It is our opinion that the question as to whether these interventors are entitled to recover for this material hinges upon the proposition as to whether the material as furnished comes within the terms of the contract and bond in evidence, and is not dependent upon the question as to whether or not the material as furnished was lienable under our mechanics' lien statute. As heretofore stated, the statute provides that the bond shall be conditioned for the payment of all material used in said work, whether by sub-contractor or otherwise. The bond and contact in the present case appears to be broader than required by the statute, and provides that the contractor shall pay the proper parties for all amounts due for *material and labor used and employed in the performance thereof.* While it may be true as contended by appellant that the coal and that part of the lumber which was used in the performance of the contract but which was afterwards washed away by the

floods did not actually enter into the construction of the sewer so as to form the basis for a materialman's lien, still from our view-point of this case it is not necessary for us to here decide that proposition.

Under the broad terms of this contract and bond the defendant, Universal Construction Company, obligated itself to pay the proper parties for all material used and employed in the performance of the work. It is plain from the evidence that this coal and all of the lumber was used by J. W. Farley & Company in the performance of the work contemplated by the contract.

In the event the contract and bond was not broader than the statute, it would have been necessary for the evidence to have disclosed that the material was used in the work of constructing the sewer. We accordingly hold that under the provision contained in the bond and contract heretofore quoted, it was not incumbent upon the intervenors to show that the coal and lumber furnished by them actually entered into the construction of the sewer. It was sufficient in order to entitle them to recover that the evidence disclosed that the lumber and coal was used and employed in the performance of the work contemplated by the contract.

In their zeal to carry out the obligation placed upon them by the statute, the city officials inserted provisions in the contract and bond which were broader than was required by the statute. The question may well be raised whether the city had power under the law to enter into such a contract and place stipulations therein in regard to the obligations of the contractor to pay materialmen on the work which are broader than the language specified in the statute, section 1247.

Whatever may be the law in other jurisdictions it seems to be well settled in this State that the city has full power and authority to enter into the contract and bond in question. [Public Schools v. Wood, 77 Mo. 197; Glencoe Lime & Cement Company v. Von Phul, 133 Mo. 561, 34 S. W. 843; Devers v. Howard, 144 Mo.

671, 46 S. W. 625.] For other authorities from other jurisdictions, see Note to Knight & Company v. Castle, Indiana Supreme Court, 27 L. R. A. (New Series) 573, l. c. 581; Jenkins v. Chesapeake & Ohio R. R. Company, 49 L. R. A. (New Series) 1183.

The case of Kansas City Sewer Pipe Company v. Thompson, 120 Mo. 221, 25 S. W. 522, which seems to state a contrary rule, was overruled in the Von Phul case, 133 Mo. 561, 34 S. W. 561.

The contract and bond in suit under these authorities is not *ultra vires* the corporation, and the city having the general power to build sewers has the implied power of imposing the obligation upon the contractor to pay those who furnished labor and materials used and employed in the performance of the contract, regardless of the express power given to the city by section 1247 of the statute.

In view of the fact that the evidence disclosed that the coal and all lumber furnished by these intervenors was used and employed by the sub-contractor in the performance of the work, they are entitled to recover. The Commissioner recommends that the judgment be affirmed.

PER CURIAM:—The foregoing opinion of Biggs, C., is adopted as the opinion of the court. The judgment of the Circuit Court is accordingly affirmed. jurisdictions, see Note to Knight & Company v. Castle,

*Reynolds, P. J.,* and *Allen, J.,* concur. *Becker, J.,* not sitting.